George Andrews, J.,
delivered the opinion of the Court.
The original bill in this cause charges that the Mc-Minnville and Manchester Railroad having failed to pay the interest due upon the" bonds issued to it by the State of Tennessee, the Governor, as authorized by law, took possession of the road, and appointed D. E. *219 Davenport a Receiver, who proceeded to take possession of and to run the road on behalf of the State ; that said Davenport, with the assent of the then Governor, hut without authority of law, on the 19th of January, 1869, executed a lease of said railroad and its appurtenances, to the defendants, Huggins and Price, for the term of three years, which term was, by a subsequent agreement between said Davenport and said lessees, extended to five years.
It is further alleged that said lease was without authority of law and wholly void; that, in pursuance of a subsequent general statute, the complainant, Marbury, was appointed and qualified as Receiver in the place of Davenport, and that said Huggins and Price, claiming to hold under their lease from Davenport, refuse to surrender the possession thereof to him.
The bill prays, amongst other things, for the issuance of an injunction to restrain the defendants, Huggins and Price, from controlling, directing, or running the railroad, and from interfering with complainant, Mar-bury, in the discharge of his duty as Receiver of said road; and that said Marbury be put in full and complete possession thereof.
Upon this bill, and on ex parte application, the Chancellor directed that an injunction issue as prayed for.
Upon this fiat of the Chancellor, the clerk issued a writ of injunction, not only restraining the defendants, as prayed in the bill, but also commanding the sheriff to put the complainant, Marbury, as Receiver, in full and *220 complete possession of the railroad; and the sheriff thereupon executed the writ, and placed Marbury in possession as commanded.
The defendants, Huggins and Price, filed their answer,. asserting their right to the possession of the road and the validity of the lease under which they claimed, and moved before the Chancellor at Chambers for a dissolution of the injunction, and that they be reinstated in the possession of the road.
Upon the argument of this motion, the Chancellor dissolved the injunction, and ordered that Marbury redeliver the railroad to the lessees, Huggins and Price. Under this order, the road was restored to the possession of the lessees, though it does not appear, from this record, in what manner this was accomplished.
Huggins and Price then filed a cross bill, reciting the proceedings already 'had, and charging, among other things, that the complainant, Marbury, and other parties, who were operating with him, and who expected to make money by obtaining possession of said railroad, were making efforts to have a law passed by the Legislature, the object of which was to turn the present complainants, Huggins and Price, out of possession; and that, if the threatened legislation was delayed, these parties would institute a pretended action of replevin to recover possession of the road. It was further charged that the law now attempted to be passed in the Legislature, purports to authorize the Governor of the State, without. notice, to issue his warrant to the sheriffs of the counties through which said road passes, requiring *221 tbem to eject the complainants in the cross bill without opportunity of testing their right to the possession; and that said statute, when perfected, would be invalid as against the rights of said complainants.
The defendants named in the cross bill, were D. W. C. Senter, Governor of this State, the sheriffs and the clerks of the Circuit Courts of Coffee County and Warren County, and Marbury and the McMinnville and Manchester Railroad Company. It was prayed that a writ of injunction issue, restraining the Governor from issuing any warrant or other process for the purpose of interfering with the possession of the complainants; that said clerks be enjoined from issuing any process out of said courts in the name of the Governor, the State, or of any one else, for the purpose of depriving complainants of the possession of said road; that said sheriffs be enjoined from executing any warrant issued by the Governor, or any process issued by said clerks at the suit of any of said parties while this suit should be pending; and that the McMinnville and Manchester Railroad Company be also enjoined from commencing any other suits or proceedings against the complainants, and from interfering with their possession.
Upon ex parte application at Chambers, the Chancel-Ipr granted the injunction as prayed for, against all the defendants and officers named, except the Governor.
Marbury and the Railroad Company filed their answer to the cross bill, and moved to dissolve the injunction; which motion was refused by the Chancellor.
Some proceedings were had in the cause, and much *222 matter stated, in the pleadings, which it is not necessary for the purposes of this decision, to recapitulate.
The McMinnville and Manchester Railroad Company and P. H. Marbury, Receiver, the complainants in the original bill, now file petitions in this Court, praying that the action of the Chancellor in dissolving the injunction upon the original bill, and in restoring, the possession of road to Huggins and Price, the lessees; and, also, the action of the Chancellor in granting the injunction upon the cross bill, and in refusing to dissolve the same, be revised and reversed, and that the possession of the road be again delivered to them.
The present application is based upon section 2933 of the Code, which is as follows:
“The Supreme Court in term, or either of the Judges in vacation, may grant writs of supersedeas to an interlocutory order or decree, or execution issued thereon, as in case of final decrees, and may require the party applying to give bond with good security, payable to the opposite party, conditioned to pay the amount of the interlocutory order or decree, if so required upon final hearing; and further, to pay all such costs and .damages as the opposite party may sustain.”
Section 4513 of the Code, provides that the Judges of the Supreme Court “may also grant supersedeas to the execution of an interlocutory decree of an inferior court, in the cases provided for in sections 3933 and 3934.” Section 3934 is not. material to this discussion.
The petition is resisted upon the ground that the sections of the Code above quoted do not authorize this *223 Court, or a Judge thereof, to set aside or suspend an interlocutory order or decree of the nature of those made by the Chancellor in this cause.
The question is, whether, under the authority given us to grant supersedeas to interlocutory orders and decrees, we may set aside orders of the Chancellor, granting and dissolving injunctions; or whether our authority is limited to the staying of proceedings under decrees which are of a nature to be actively and affirmatively enforced against the party.
Our statutes recognize the- writ of supersedeas as an established remedy, but give no general definition of the writ, nor description of its office. But the only cases in which a supersedeas is provided for, or mentioned in the Code, except in sections 3933 and 4513, are cases in which it is given as ancillary to the writ of error and the writ of certiorari, and in which its office is merely to stay proceedings under the judgment or decree while the cause is pending in' the appellate court; and the proper office and function of the writ of supersedeas is, undoubtedly, merely to stay proceedings: Bouvier’s Law Diet.
It is to be observed that sections 3933 and 4513 do not give the right to an appeal from an interlocutory decree. Such an appeal is allowed only in the cases mentioned in section 3157, which provides that “the Chancellor or Circuit Judge may, in his discretion, allow an appeal from his decree in equity causes, determining the principles involved,' and ordering an account or a sale, * or partition,- before the account is. taken or *224 the sale or partition is made; or he may allow such appeal on overruling a demurrer; or he may allow any party to appeal from a decree which settles his right, although the case may not be disposed of as to others.
But the supersedeas provided for in sections 3933 and 4513, -does not operate .as an appeal or writ of error, to bring the cause into this court. The cause remains in the inferior -court; and the supersedeas, when granted, merely suspends the operation of the decree until a final hearing, but does not reverse it.
The distinction between reversing a decree and merely superseding it, must be kept in mind. • If the decree is one which is of a nature to be actively enforced against the party, then it may be superseded; proceedings under it may be stayed. But such a decree is suspended, not reversed, by the .supersedeas; and if the decree or order be purely negative or prohibitory in its character,- it may be, in a proper proceeding, reversed; but it is not a proper subject for the operation of a supersedeas; for there can be no proceeding under it to be stayed.
If it had been intended that this Court should have the jurisdiction to reverse and set aside all interlocutory decrees, the right to grant an appeal or writ of error to such decrees would have been conferred in express terms. But no power is given us to grant appeals or writs of •error to interlocutory decrees. The right to grant appeals from such decrees is confined to the Circuit Judges and Chancellors, and we are permitted only to grant the writ of supersedeas to such ¡decrees; and if a particular *225 decree is of sucb a nature tbat a supersedeas can have no effect or operation upon it, that does not authorize us to go further and reverse it, and thereby to give to our writ of supersedeas the effect of an appeal or of a writ of error.
The authority to grant a supersedeas to the execution of an interlocutory decree is conferred upon a* single Judge of the Supreme Court in vacation, as well as upon the Court in term time — which is a further indication of the legislative intent that the authority to supersede should not include the power to reverse.
An injunction in our practice, is a prohibitory writ, and its office is to restrain, and not to compel performr anee. It does not authorize any act to be done; and there can be no proceeding under it capable of being stayed by a supersedeas.
So of an order dissolving an injunction. Such an order removes the prohibition imposed by the injunction, but does not itself require or authorize the doing of any act. The injunction being removed, the party may act at his peril, as if the injunction had not issued; but he does not act under and by virtue of the order dissolving the injunction. Neither under the injunction, or the order dissolving it, is there any proceeding which can be stayed; and therefore, though each of these orders might be reversed, a supersedeas can act on neither.
The terms of section 4513 of the Code, which must be construed in connection with section 3933, are convincing in this case. We are there authorized to “grant *226 supersedeas to the execution of an interlocutory decree,” distinctly implying that the decrees to which the super-sedeas may be applied, are decrees which, in their nature, are susceptible of being executed by some affirmative action or process of the Court.
The conclusion is, that we have not the jurisdiction upon an application under these statutes, to set aside ■an interlocutory order granting a temporary injunction,, or an order dissolving such an injunction.
If a case, could be supposed in which a writ, being in form an injunction, might have in practical effect an affirmative action or operation, so as to require us to supersede it, the orders granting and dissolving the injunctions in the present case are not of that nature.
The cross bill filed by Huggins and Price is certainly in some respects, a remarkable one; but its merits and the propriety or validity of the injunction granted upon it, are not before us upon this application. The ■ injunction which the Chancellor ordered to be issued upon it was purely prohibitory, and we can not supersede the prohibition or dissolve the injunction upon the present petition.
The granting of .temporary injunctions is confided to the discretion of the Chancellor. It is a legal discretion to be controlled by well settled rules, but a discretion which it is not permitted to us to revise upon an application of this kind.
•The power to grant injunctions is one necessary to the protection of the citizen, but is in itself, a tremendous power, which may easily be misused. It involves *227 tbe most delicate responsibility, and requires to be exercised with the greatest wisdom and. caution. Undoubtedly cases may arise in which this power may be misused. But the power must ' be intrusted somewhere. It is no committed to us,* and while the grant of every power involves the possibility of its misuse, that possibility is not a reason why we should assume a jurisdiction which does not rightfully belong to us.
This Court has, in several instances, acted upon petitions of this nature, and granted supersedeas to orders of Chancellors granting and dissolving injunctions; but it has always, so far as we are advised, been done without objection being taken to the jurisdiction; and we are satisfied that the jurisdiction in cases of this kind, cannot be assumed. The prayer of the petitioners must be denied.
Tbe order directing that the possession of the road be restored to Huggins and Price, was an order of a nature to be affirmatively and actively executed, and a supersedeas might in a proper case, issue to the execution of such an order. But it appears from the record presented to us, that it has been already executed or complied with, and that Huggins and Price are in possession of the road. A supersedeas to this order would be ineffectual, and we cannot give to a supersedeas the effect of a writ of restitution.